# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WADE ROBERTS,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO CLEARING SERVICES, LLC,<br><br>Defendant. | CIVIL ACTION NO.<br>1:21-cv-05221-WMR |

## ORDER

Before the Court is Defendant Wells Fargo Clearing Services, LLC's ("WFCS") motion to compel arbitration and to dismiss this action [Doc. 2], which Plaintiff Wade Roberts opposes [Doc. 5]. The Court held a hearing on the motion on February 7, 2022. [Doc. 8.] After careful consideration of the parties' arguments, the applicable law, and the relevant parts of the record, and for the reasons discussed herein and at the hearing, the Court grants WFCS's motion to compel and dismisses this case without prejudice.

**I.     Background**

In October 2021, Mr. Roberts commenced this action in Georgia state court against WFCS. [Doc. 1-1.] Mr. Roberts was previously employed by WFCS as a financial advisor. [*Id.* ¶ 4.] He alleges that WFCS "falsely communicated the

existence of an indebtedness arising out of loans and loan documents that do not exist." [*Id.* ¶ 17.] Specifically, after the termination of his employment, WFCS sent two demand notices to Mr. Roberts, which demanded payment in the total amount of $809,965.26. [*Id.* ¶¶ 14, 18, 23.] Mr. Roberts alleges that, during his employment, he did not apply for a loan with WFCS and did not receive funds from WFCS other than employee compensation. [*Id.* ¶¶ 7, 9.] He further alleges that he did not receive any payment from WFCS that was given as a loan. [*Id.* ¶ 19.] Nonetheless, apparently due to Mr. Roberts's failure to comply with the demand notices, WFCS subsequently "seized funds from [his] Wells Fargo accounts." [*Id.* ¶¶ 23–26.] Mr. Roberts brought claims for conversion and improper solicitation of money. [*Id.* ¶¶ 27–35.]

WFCS removed the action to this Court based on the Court's diversity jurisdiction and then filed the present motion to compel arbitration and to dismiss the action. [Docs. 1, 2.] In its motion, WFCS argues that Mr. Roberts signed multiple agreements requiring him to arbitrate his claims against WFCS before a Financial Industry Regulatory Authority ("FINRA") arbitration panel. [Doc. 2-1 at 1.] Specifically, WFCS contends that the following agreements were signed by Mr. Roberts and contain arbitration clauses: (1) Form U4 Uniform Applications for Securities Industry Registration or Transfer; (2) the offer letter; (3) five promissory

notes; and (4) three Wells Fargo Agreements Regarding Trade Secrets, Confidential Information, Non-Solicitation, and Assignment of Inventions.  [*Id.*]

For instance, the offer letter, which Mr. Roberts signed, and which confirmed the terms of his employment, states:

> You agree that any actions or claims concerning your employment or termination of employment with Wells Fargo Advisors shall be resolved by arbitration under the then-current Rules of the Financial Industry Regulatory Authority ("FINRA") regardless of which Party commences the claim. . . . Unless otherwise provided by law, any controversy relating to your duty to arbitrate hereunder, or to the validity or enforceability of this arbitration clause, or to any defense to arbitration, shall also be arbitrated before FINRA.

[Doc. 2-2 at 6, 16, 18.]  Likewise, the promissory notes, which Mr. Roberts also signed, require the parties to arbitrate "any actions or claims" instituted as a result of "any controversy arising out of, or in connection with the validity, enforcement or construction of, [each] Note" or "concerning [Mr. Roberts's] application for employment, employment, or separation from employment."  [*E.g.*, Doc. 2-5 at 4, 6.]  Some of the notes further state that the parties must arbitrate "any controversy relating to [Mr. Roberts's] duty to arbitrate."  [*E.g.*, Doc. 2-6 at 3.]

Mr. Roberts opposes WFCS's motion.  [Doc. 5.]  The Court held a hearing on the motion on February 7, 2022.  [Doc. 8.]

## II. Discussion

Under the Federal Arbitration Act, a written arbitration agreement in certain contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal courts "interpret arbitration clauses broadly where possible," such that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012). Indeed, the Eleventh Circuit recognizes a "healthy regard for the federal policy favoring arbitration." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017).

The Federal Arbitration Act "requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4). That means the Court must first decide whether any of the arbitration agreements at issue here are enforceable under Georgia law. *See id.* Under Georgia law, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. If any of

the arbitration agreements are enforceable, the Court must then decide whether Mr. Roberts's claims fall within the scope of those agreements. *See Lambert*, 544 F.3d at 1195.

Starting with the first requirement, the Court determines that both the offer letter and the promissory notes are enforceable under Georgia law. The offer letter is between Mr. Roberts and WFCS, which are able to contact; the consideration includes Mr. Roberts's agreement to work for WFCS in exchange for WFCS's agreement to provide compensation and bonuses; the parties assented to the offer letter; and the subject matter of the offer letter is the terms and conditions of employment. [*See* Doc. 2-2 at 6–18.] As for the notes, they are between Mr. Roberts and WFCS; the notes are "FOR VALUE RECEIVED"; the parties assented to the notes; and the subject matter of the notes is the payment of the amount listed in each note. [*See, e.g.*, Doc. 2-5 at 2–6.]

Mr. Roberts makes a few arguments as to why he believes the promissory notes are unenforceable,[1] but they are unavailing. First, at the hearing, he argued that the notes are unenforceable because there is no indication that he received consideration for making the notes. However, the notes state they were made "FOR VALUE RECEIVED" [*e.g.*, Doc. 2-5 at 2], which indicates there was consideration.

---

[1] Mr. Roberts nowhere appears to contest the enforceability of the offer letter. [*See generally* Doc. 5.]

In addition, Georgia courts have expressly held that "FOR VALUE RECEIVED" is ambiguous language that "permits the admission of parol evidence regarding the specific nature of the consideration." *Nash v. Twp. Invs., LLC*, 740 S.E.2d 236, 237–38 (Ga. Ct. App. 2013); *see also Smith v. Thigpen*, 680 S.E.2d 604, 605 (Ga. Ct. App. 2009) ("Because the Note was given 'FOR VALUE RECEIVED,' parol evidence is admissible to resolve any ambiguity as to the specific nature of the consideration.").

Looking to parol evidence, WFCS has provided a declaration stating that "Mr. Roberts had received five loans from WFCS during his employment" that were connected to the five notes at issue here. [*See* Doc. 7-1 ¶¶ 3–5.] *See also Smith*, 680 S.E.2d at 605–06 (looking to an affidavit as parol evidence). Indeed, a document attached to the notes, titled "Loan Payment Authorization," characterizes the payments under the notes as "loan repayments." [*E.g.*, Doc. 2-5 at 7.] As such, the Court finds that Mr. Roberts received loans as consideration for making the notes.

Mr. Roberts next argues that the notes are unenforceable because they are not unconditional promises to pay and thus are non-negotiable. [*See* Doc. 5 at 5 & n.11.] But, the notes expressly state that Mr. Roberts "unconditionally promise[s] to pay" the amount listed in the notes. [*E.g.*, Doc. 2-5 at 2.] In any event, the *negotiability* of the notes is ultimately immaterial to the *enforceability* of the notes, the issue at hand here. *Cf. Ameritrust Co., N.A. v. White*, 73 F.3d 1553, 1558 (11th Cir. 1996)

6

("[I]f the note is non-negotiable, then it is governed by Georgia common law relating to the assignment of a contractual right[.]").

Mr. Roberts further contends that the notes are unenforceable because the offer letter contains a clause stating that the offer letter "constitutes the entire agreement between the parties." [Doc. 5 at 6–7, 9.] However, there is no indication that the notes altered the parties' agreement in the offer letter. And, even if they did, in addition to stating that the offer letter "constitutes the entire agreement," the offer letter further states that it can be altered if in writing. [Doc. 2-2 at 16–17.] There is no dispute here that the notes are in writing.[2]

Because the offer letter and the promissory notes are enforceable, the Court must next consider whether Mr. Roberts's claims fall within the scope of the agreements' arbitration clauses. In the complaint, Mr. Roberts challenges WFCS's actions after the termination of his employment, including its demands for payment of funds arising out of various loans and its attempts to collect payment. [Doc. 1-1 ¶¶ 14, 17–18, 23–26.] Mr. Roberts alleges he did not receive a loan from WFCS and instead only received employee compensation during his employment. [*Id.* ¶¶ 9, 19.]

---

[2] In addition to these arguments, Mr. Roberts repeatedly asserts that the funds he received from WFCS were compensation and not loans that require repayment. [*See, e.g.*, Doc. 5 at 5–6, 9–10.] Because these contentions go to the merits of his claims, as opposed to the enforceability of the agreements, the Court does not address them here.

As for the scope of the arbitration agreements, the offer letter requires the parties to arbitrate, under the FINRA rules, "any actions or claims concerning [Mr. Roberts's] employment or termination of employment." [Doc. 2-2 at 16.] Similarly, the promissory notes require the parties to arbitrate "any actions or claims" instituted as a result of "any controversy arising out of, or in connection with the validity, enforcement or construction of, [each] Note" or "concerning [Mr. Roberts's] application for employment, employment, or separation from employment." [*E.g.*, Doc. 2-5 at 4.]

The Court determines that Mr. Roberts's claims readily fall within the scope of the arbitration agreements. Mr. Roberts claims the funds he received were employee compensation, which are "claims concerning [his] employment" under the offer letter and "claims concerning [his] . . . employment" under the promissory notes. [Doc. 2-2 at 16; *e.g.*, Doc. 2-5 at 4.] Similarly, he disputes that the funds he received during his employment were loans, which is a "controversy . . . in connection with the . . . construction of" the promissory notes. [*E.g.*, Doc. 2-5 at 4.] Mr. Roberts also claims that WFCS improperly demanded payment and attempted to collect payment after his termination, which are "claims concerning [his] . . . termination of employment" under the offer letter. [Doc. 2-2 at 16.]

Beyond that, even if there was any doubt about Mr. Roberts's duty to arbitrate under these agreements, the Court notes that the agreements also require the parties

8

to arbitrate "any controversy relating to [his] duty to arbitrate." [*E.g.*, Doc. 2-2 at 16.] Finally, even if the foregoing analysis was a close question (and the Court does not believe it is), the Court would still compel arbitration in light of the Eleventh Circuit's instruction that courts should "interpret arbitration clauses broadly where possible," such that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Solymar Invs.*, 672 F.3d at 988; *see also Kroma Makeup*, 845 F.3d at 1354 (recognizing a "healthy regard for the federal policy favoring arbitration").

In short, the arbitration agreements in both the offer letter and the promissory notes are enforceable, and Mr. Roberts's claims fall within the scope of these arbitration agreements.[3]

### III. Conclusion

Accordingly, WFCS's motion to compel arbitration and to dismiss this action [Doc. 2] is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE**.[4]

**IT IS SO ORDERED**, this 1st day of March, 2022.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE

---

[3] Because these arbitration agreements are independently sufficient to compel arbitration, the Court does not consider whether the other arbitration agreements cited by WFCS [Doc. 2-1 at 3–6, 8–9] are enforceable and cover Mr. Roberts's claims. The Court therefore need not address Mr. Roberts's arguments on those other agreements. [*E.g.*, Doc. 5 at 2–3.]

[4] WFCS asks the Court to dismiss this action rather than stay it pending arbitration. [Doc. 2-1 at 16–18.] Mr. Roberts does not oppose this course of conduct [*see generally* Doc. 5], so the Court dismisses the action.